(No. 5298—

DONALD GILFAND, A Mentally ill person, by REBECCA DI GIOVANNI, his Grandmother and next friend, and REBECCA DI GIOVANNI, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 24, 1969.*

LOUIS M. MARCH, Attorney for Claimants.

WILLIAM G. CLARK, Attorney General; MORTON L. ZASLAVSKY AND ETTA J. COLE, Assistant Attorneys General, for Respondent.

PERLIN, C. J.

Donald Gilfand, a mentally ill person, is represented by Rebecca Di Giovanni, his grandmother and next friend, in this proceeding. Rebecca Di Giovanni was the mother of Donald Gilfand's mother who died in 1962. Claimants seek recovery of $25,000.00 for personal injuries alleged to have been sustained by Donald Gilfand on August 20, 1965, while he was a patient at the Dixon State Hospital. Claimants further allege that Donald Gilfand was without provocation physically assaulted by a Mr. Alan

Sparks who was employed by respondent, and sustained permanent personal injuries with change in both his physical and mental state.

Claimants allege that respondent was negligent in the care, maintenance and control of Donald Gilfand, because it failed to provide a safe place for the patient; failed to properly interview and hire personnel charged with the care and attention of patients; failed to render proper medical care when Donald Gilfand was physically assaulted on August 20, 1965; and, failed to use due care and caution under the circumstances.

Rebecca Di Giovanni also claims the sum of $25,000.00 in her own behalf alleging that she has suffered permanent damages from mental anguish in seeing Donald Gilfand in the condition in which he has been subsequent to August 20, 1965, and that she has had to make numerous trips to see Donald Gilfand at said hospital and to confer with the physicians, officials, and the State of Illinois in order to obtain medical and other care required by the condition of Donald Gilfand.

Mrs. Di Giovanni testified that, when she visited Donald on August 23rd or 24th, 1965, the left side of his head was full of blood, black and blue marks and cuts were on his throat and knee, and his arm was injured. When she asked Donald who did it, he replied "Mr. Sparks." She stated that she brought Donald to see Dr. Tillman on or about the 23rd or 24th of August, and that he looked at his head. She stated that the head at that time was full of blood. Pictures, which Mrs. Di Giovanni stated she had taken of Donald at that time, were admitted into evidence. Claimants presented no medical testimony to explain the significance of the pictures. Neither the photographer nor the State employee

who allegedly saw the injury were called to testify. No conclusion of injury or of respondent's negligence can be drawn from the pictures themselves.

Mrs. Di Giovanni testified that she had seen Alan Sparks several times in 1965, and that he himself told her he was an employee from cottage A-3.

She knew of no medical attention given to Donald Gilfand after she saw him on or about August 24, 1965. Donald told her that the date of the injury was August 20, and she stated that she came to visit him about August 23rd or 24th.

Institutional records of visits, which were presented on cross-examination, showed that Mrs. Di Giovanni had visited Donald on September 2, 1965, and that the prior visit was August 17, 1965. Mrs. Di Giovanni agreed that the records were "undoubtedly correct." She also stated that September 2 could have been the date on which she advised the authorities of the alleged incident.

Respondent's witnesses established that there was no employee named Alan Sparks, but produced one Donald Spotts who was an employee at the time of the alleged injury. Mrs. Di Giovanni then said that he was the employee who assaulted Donald. Spotts denied that he had ever struck Donald Gilfand, and stated with regard to Donald's conduct that: "He was into something all the time. He was always cracking other kids on the head, sodomy with the other residents, soiled on himself."

Donald Gilfand was called as a witness by claimant, but was excused from testifying by the commissioner who described him as "an extremely mentally incompetent person of about 20 years of age", and "unable to testify lucidly as to the alleged occurrence or assault."

Samuel Gilfand, Donald Gilfand's father, testified that he was divorced from claimant's mother in 1950, and that he was awarded sole custody of claimant herein, which he retained at the time of the hearing. He and his wife Rosalie, stepmother of claimant Donald Gilfand, testified that they visited Donald on September 12, 1965; that there was nothing unusual in his appearance; and, that his son never made any complaints of injuries by or of any improper treatment by any of the employees of the Dixon State Hospital. He further testified that the 2½ inch scar on Donald's head was the result of a brain operation, which had been performed at the Michael Reese Hospital when he was two years old. Mr. Gilfand and his wife stated that they visited Donald every two months.

Dr. Paul Tillman, assistant medical superintendent at the Dixon State Hospital, testified that Mrs. Di Giovanni complained to him several times about employees, and that on August 1, 1965 his records showed that a long distance call was received from Mrs. Di Giovanni during which she accused an employee of hitting Donald two weeks previously. The grandmother subsequently brought Donald into Dr. Tillman's office, and showed him a scar, which was 2½ inches long, saying it was a recent injury. When Dr. Tillman said that in two weeks you cannot have this kind of scar tissue, she replied: ''Yes, but he hit him anyway.''

Dr. Tillman testified that two weeks prior to August 1, 1965 the grandmother came into his office. Dr. Tillman told her he would investigate the complaint. He then talked to the supervisor who reported to him that Donald had not been struck by any employee. Dr. Tillman did have reports of injuries to Donald's head, dated 1962,

1964 and 1966, on which occasions he was apparently injured by other inmates. Dr. Tillman testified there was no record of an employee named Alan Sparks.

Dr. Hatzipanagiotis, a staff physician at the Dixon State Hospital, testified that, when Rebecca Di Giovanni claimed Donald Gilfand had suffered an injury from an employee named Alan Sparks in cottage 3 on August 20, 1965, he investigated, and found no employee with that name. Upon checking his records he found no injury on that special date.

Admitted into evidence were letters reflecting complaints on several occasions, dated June 18, 1959, August 25, 1961, and February 14, 1962, wherein claimant Rebecca Di Giovanni had charged staff members with assaulting Donald Gilfand. A letter, dated September 21, 1965, from Lawrence A. Bussard, Assistant Director, Division of Mental Retardation Services, to Mrs. Di Giovanni stated that he had checked with Dr. Tillman, and that Donald had not been injured. The letter stated that Dr. Tillman could find no injury of recent origin to the head.

Before claimants may recover for damages they must prove by a preponderance of the evidence (1) injury proximately caused by the negligence of respondent; and, (2) damages.

The testimony of Rebecca Di Giovanni with regard to injury or damages was not corroborated by any other witness. It was rebutted by several witnesses including claimant Gilfand's own father.

It is the opinion of the Court that claimants have failed to sustain the burden of proving their case by a preponderance of the evidence. *Halloway* vs. *State of Illinois*, 23 C.C.R. 195; *Haynes* vs. *State of Illinois*, 22

C.C.R. 288; *Ackley* vs. *State of Illinois*, 22 C.C.R. 41; *Daly* vs. *State of Illinois*, 21 C.C.R. 610; *Klimek* vs. *State of Illinois*, 21 C.C.R. 145; *Flint* vs. *State of Illinois*, 21 C.C.R. 80; *Houghton* vs. *State of Illinois*, 18 C.C.R. 90.

The claims of Rebecca Di Giovanni and Donald Gilfand must hereby be denied.